# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 24–55161 |
| MARY ANN SCHEIBAL and HEATHER F. SCHEIBAL, | Chapter 13 |
| Debtors. | Judge Mina Nami Khorrami |
| | |
| MARK E. DOTTORE, solely in his capacity as the Receiver for the Receivership Entities<br>2344 Canal Road<br>Cleveland, Ohio 44113-2535 | Adv. Pro. No. 25-_____ |
| Plaintiff, | |
| v. | |
| MARY ANN SCHEIBAL<br>2626 Sweet Clover Lane<br>Galena, Ohio 43021 | |
| HEATHER F. SCHEIBAL<br>2626 Sweet Clover Lane<br>Galena, Ohio 43021 | |
| and | |
| SCHEIBAL PROPERTY DEVELOPMENT, LLC<br>c/o Matthew Fields<br>593 Arden Street<br>Lewis Center, Ohio 43035 | |
| Defendants. | |

**COMPLAINT TO AVOID FRAUDULENT TRANSFERS, FOR JUDGMENT FOR THE VALUE OF THE AVOIDED TRANSFERS, FOR JUDGMENT FOR UNJUST ENRICHMENT, FOR IMPOSITION OF A CONSTRUCTIVE TRUST, TO EXCEPT FROM DISCHARGE THE DEBT DUE TO THE RECEIVER, AND FOR A DECLARATORY JUDGMENT THAT CERTAIN PROPERTY IS NOT PROPERTY OF THE ESTATE**

Mark E. Dottore, Receiver (the "**Receiver**") for The AEM Services, LLC ("**AEM Services**") and related entities (collectively, with AEM Services, the "**Receivership Entities**"), brings this action against Mary Ann Scheibal ("**Mary**"), Heather F. Scheibal ("**Heather**" and, together with Mary the "**Debtors**"), and Scheibal Property Development, LLC ("**Scheibal Development**" and, together with the Debtors, the "**Defendants**") (i) to avoid certain fraudulent transfers to the Defendants, (ii) for judgment for the value of the avoided transfers, (iii) for judgment for unjust enrichment, (iv) for imposition of a constructive trust, (v) to except from discharge the debts due from Mary and from Heather to the Receiver, and (vi) to for a declaratory judgment that the funds received by the Defendants from the Dente/AEM Ponzi Scheme is not "property of the estate."

For his complaint, the Receiver alleges as follows:

**INTRODUCTORY STATEMENT**

1.  Mary, Heather, and their wholly-owned company, Scheibal Development collectively received $3,163,918.00 from the Dente/AEM Ponzi Scheme (defined *infra* at ¶ 16). "Since 1966, [the Sixth Circuit Court of Appeals] has found that the question of intent to defraud in a Ponzi scheme 'is not debatable.' *Conroy v. Shott,* 363 F.2d 90, 92 (6th Cir.), *cert. denied,* 385 U.S. 969 (1966). Other courts

have also noted that an intent to defraud can be inferred as a matter of law from the mere fact that the debtor was running a Ponzi scheme[.]" *In re Mark Benskin & Co., Inc.*, 59 F.3d 170 (6th Cir. 1995 unpublished). The debt arising out of the fraudulent conveyances from the Dente/AEM Ponzi Scheme directly to Mary and to Heather, and to them as subsequent transferees from Scheibel Development is nondischargeable under 11 U.S.C. § 523(a)(2)(A). *See Husky Intern Electronics, Inc. v. Ritz*, 578 U.S. 355, 365 (2016); *Bartenwerfer v. Buckley*, 598 U.S. 69, 80-83 (2023).

## THE PARTIES

2. *Plaintiff*. The Receiver is the duly appointed and acting receiver of the Receivership Entities[1] pursuant to orders entered by the Summit County Court of Common Pleas (the "**State Court**") in Case No. CV-2022-05-1754, *Christopher Longo v. The AEM Services, LLC, et al.* (the "**Receivership Case**") on June 22, 2022, on July 15, 2022, on August 11, 2022 (the "**Second Amended Order Appointing Receiver**"), and on November 2, 2022.[2] The Second Amended Order Appointing Receiver as amended by the order of November 2, 2022 is currently the "Operative Receiver Order." A copy of the Operative Receiver Order—*i.e.*, the

---

[1] As of the date of the filing of this complaint, the "**Receivership Entities**" are The AEM Services, LLC ("**AEM Services**"), AEM Investments, LLC ("**AEM Investments**"), AEM Wholesale, LLC ("**AEM Wholesale**"), AEM Productions, LLC ("**AEM Productions**"), AEM Real Estate Group, LLC ("**AEM Real Estate**"), AEM Capital Fund, Ltd. ("**AEM Capital Fund**"), A&J RE Holdings, LLC ("**A&J**"), and Landmark Property Development f/k/a Landmark Real Estate Endeavors ("**Landmark**").

[2] Copies of the referenced orders are available from the website of the Summit County Clerk of Courts commencing at:
https://clerkweb.summitoh.net/RecordsSearch/Disclaimer.asp?toPage= SelectDivision.asp.

Second Amended Order Appointing Receiver marked to show the amendments made by the order of November 2, 2022—is attached hereto as Exhibit 1.

3. *Defendant No. 1*. Mary is, and at all relevant times was, an individual residing in Delaware County, Ohio.

4. *Defendant No. 2*. Heather is, and at all relevant times was, an individual residing in Delaware County, Ohio.

5. *Defendant No. 3*. Scheibal Development is a limited liability company organized pursuant to the laws of the State of Ohio that is wholly owned and controlled by Mary and Heather.

6. Mary and Heather are the co-debtors in Southern District of Ohio Bankruptcy Case No. 24-55161 (the "**Bankruptcy Case**").

### JURISDICTION, VENUE, CORE STATUS, AND STANDING

7. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 523(a) and 541, and Rule 7001(1), (2), (6), and (9) of the Federal Rules of Bankruptcy Procedure[3] seeking a determination of this Court that certain obligations of the Debtors to the Receiver are nondischargeable, liquidating the amount of the Receiver's claim against the Debtors, and determining that certain property in the possession of the Debtors is not "property of the estate" as that term is defined in

---

[3] Unless otherwise indicated, all Section, Chapter, and Subchapter references are to Title 11 of the United States Code (11 U.S.C. §§ 101–1532; the "**Bankruptcy Code**"), all references to the Civil Rules or "Rule XX" are to the Federal Rules of Civil Procedure (the "**Civil Rules**"), all references to the Bankruptcy Rules or to "Rule YYYY" are to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and all references to "LBR xxxx-x" are to the Local Rules for the United States Bankruptcy Court, Southern District of Ohio.

11 U.S.C. § 541; all of which are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I), (K), and (O). Determination of these matters is within the Court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011).

8. This adversary proceedings also seeks the avoidance of certain fraudulent transfers from the Dente/AEM Ponzi Scheme to the Defendants, a judgment against each defendant for unjust enrichment, and the imposition of a constructive trust over all the funds received by the Defendants from the Dente/AEM Ponzi Scheme. These matters are non-core but related-to proceedings.

9. This Court has jurisdiction over the Bankruptcy Case and this adversary proceeding pursuant to 28 U.S.C. § § 1334 and 157(a) and Amended General Order No. 05-02 entered on September 16, 2016, by the United States District Court for the Southern District of Ohio.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

11. As a creditor (*see* 11 U.S.C. §§ 101(10) and 101(5)(a)), the Receiver has standing pursuant to Bankruptcy Rule 4007(a) to file this complaint.

**THE DENTE/AEM PONZI SCHEME**

12. On July 1, 2022, Sheryl Maxfield, the Director of the State of Ohio Department of Commerce, through the office of the State of Ohio Attorney General, David Yost filed a complaint (the "**Department's Verified Complaint**") against Mark Dente and other named defendants thereby commencing Summit County

Court of Common Pleas Case No. CV-2022-07-2228, entitled *Sheryl Maxfield, Director State of Ohio Department of Commerce v. Mark Dente, et al*. A copy of the Department's Verified Complaint is attached hereto as Exhibit 2.

13. In the Department's Verified Complaint, the Director of the State of Ohio Department of Commerce (the "**Director**") alleged, *inter alia*,

> 1. The Director brings this action to stop an ongoing fraudulent scheme in which Defendants[4] have raised millions of dollars from dozens of investors throughout the State of Ohio. Since at least June 2016, Defendants have engaged in and continue to engage in a pattern and practice of misusing investor funds that were supposed to be earmarked solely for investment purposes to instead enrich themselves personally and fund a lavish lifestyle.
>
> 2. Defendant Mark Dente purports to manage a portfolio of real estate investments. He entices investors, some of them elderly and on fixed incomes, with promises of significant returns, including in some instances returns as high as 36% over nine months. Dente sells investors securities primarily in the form of promissory notes and LLC interests. The investments are issued from various entities that Dente and his wife, Sharon Dente, own or control.
>
> 3. The Dentes own or control numerous purported investment businesses, many with similar names, all of which are referred to collectively herein as the "Dente Businesses." Since 2016, the primary Dente Businesses through which Defendants have raised investor funds include AEM Services, LLC; The AEM Services, LLC d/b/a AEM Funding; and AEM Capital Fund, Ltd. In addition to these entities, the Dentes also own or control AEM Wholesale, LLC; AEM Investments, LLC; AEM Productions, LLC; and Landmark Property Development, Ltd. f/k/a Landmark Real Estate Endeavers [sic], Ltd. Upon information and belief, all the Dente Business have been used by Dente to improperly commingle and misappropriate investor funds.

---

[4] The "Defendants" named in the Department's Complaint are Mark Dente, individually and as Trustee of the Mark and Sharon Dente Living Trust dated February 22, 2000, Sharon Dente, individually and as Trustee of the Mark and Sharon Dente Living Trust dated February 22, 2000, AEM Services, AEM Funding, AEM Wholesale, AEM Productions, AEM Investments, AEM Capital Fund, and Landmark.

        4.      Dente tells investors that their money will be used solely to purchase and renovate real estate properties owned or operated by the Dente Businesses. In reality, a significant portion of the money that investors entrust to Dente is not used for investment purposes but rather treated by Dente as his own personal slush fund. Dente transfers and commingles investor funds into his personal banking accounts and improperly uses those funds to make numerous non-business purchases or other payments benefitting only himself or his family or friends.

        . . .

        7.      Dente also uses newly-acquired Investor funds to repay prior investors in classic Ponzi-scheme fashion. Dente deposits investor funds directly into various business and personal accounts, including accounts in the name of Mark and Sharon Dente and accounts in the name of the Dente Businesses. Of approximately $13 million that was raised from investors since November 2016, much of the money was either improperly used by Dente for non-business purposes or paid to earlier investors.

Exhibit 2, pp. 3–4.

    14.      The Receiver's forensic accountant, David Linscott, CPA, ("**Linscott**") had to reconstruct the books and records of the Receivership Entities from the bank statements and copies of checks from the accounts used by the Receivership Entities because Dente shredded all paper records and wiped all computer drives.

    15.      Linscott's investigation of the reconstructed banking records led him to the conclusion that Dente was operating a Ponzi scheme using AEM Services and the other Receivership Entities for the period from at least April 2017 and perhaps earlier through its collapse in mid-2022. A copy of Linscott's Expert Report is attached hereto as Exhibit 3 (the "**Linscott Expert Report**").

    16.      Based on the Linscott Expert Report and his own experience as a receiver in Ponzi scheme cases, the Receiver concurs with the Director and Linscott

- 7 -

that Dente operated a classic Ponzi scheme using the Receivership Entities for the period from at least April 2017 and perhaps earlier through its collapse in mid-2022 (collectively, the "**Dente/AEM Ponzi Scheme**").

17. In addition to the evidence cited in the Department's Verified Complaint and the Linscott Expert Report that new investor money paid earlier investors, the Dente/AEM Ponzi Scheme manifested the following additional characteristics of a typical Ponzi scheme:

    a. AEM did not keep books and records. There were no comprehensive and/or accurate accounting books or records and no coherent financial statements. AEM did not complete or file any federal or state tax returns for the years 2019 through 2022.

    b. AEM commingled its funds between and among other AEM-related Receivership Entities and between the Receivership Entities and Dente's personal and family bank accounts.

    c. Dente and his family members lived lavish lifestyles. During the pendency of the Dente/AEM Ponzi Scheme, Dente transferred between $1 million and $2 million from AEM to his personal bank accounts to support his lifestyle. Among other expenditures, Dente improved his residence, purchased a vacation home, funded numerous trips to Las Vegas, enjoyed season tickets to the Cleveland Cavaliers, and paid tuition to Ohio Wesleyan University and Kent State University.

  d. The scheme collapsed when investors refused to accept increasingly higher interest rates to roll over their investments and demanded payment on their notes. By May 2022, Dente could no longer find enough new investors willing to contribute enough money to sustain the outflow of funds required to pay out fleeing investors. When the scheme collapsed AEM had minimal property.

### THE RECEIVER'S AUTHORITY AND CHARGE

18. The Operative Receiver Order provides, in pertinent part, that "The Receiver is . . . appointed the Receiver for . . . [the Receivership Entities] and all of their real and personal property . . . of whatever kind and nature . . . shall hereinafter constitute the Receivership Estate." Operative Receiver Order, ¶ 1 at 2–3.

19. The Receiver is authorized, *inter alia*, "to take possession and control of all of the property of the Receivership Entities . . . and all other assets of whatever kind and nature belonging to the Receivership Entities." Operative Receiver Order, ¶ 2 at 3.

20. The Receiver is charged to "take immediate possession and control . . . of Receivership Assets whether located in Ohio or in any other state, including . . .all general intangibles, including, but not limited to, . . .all choses in action and causes of action, including avoidance actions for transfers of any of the Receivership Assets . . . and any other asset or interest owned by the Receivership Entities or in

- 9 -

which any of the Receivership Entities asserts an interest which has any value which pertains to the Receivership Assets[.]" Operative Receiver Order, ¶ 3.b. at 7.

21. The Receiver is in the process of marshalling those assets. However, such assets will not be sufficient to reimburse the people who received less from the Dente/AEM Ponzi Scheme than they put in—the "net losers." Consequently, the Receiver must use his authority to pursue recovery from (a) investors in the Dente/AEM Ponzi Scheme who received fictitious profits—the "net winners", (b) people who received transfers from AEM Services or the Receivership Entities but did not give value for said transfers, and (c) people who did not invest in good faith in the Dente/AEM Ponzi Scheme. Absent this and other recovery actions, the Receiver will be unable to satisfy the totality of the claims of all the investors in the Dente/AEM Ponzi Scheme.

22. The instant action is brought by the Receiver as part of his continuing duty "to file litigation, including but not limited to, actions to recover property transferred or for turnover of any of the Assets when turnover is otherwise appropriate under Ohio law, actions to determine ownership of the Assets, actions to avoid liens and to recover transferred, alienated and consigned Assets; and actions to determine the extent and priority of lien interests in the Assets" (Operative Receiver Order, ¶ 2 at 3) and his authority to "institute, prosecute, or intervene in any lawsuit or summary proceeding against any other person(s) or entity(ies) to preserve and/or maximize the value of the Assets or to obtain

possession of any of the Assets unlawfully in the possession of third parties." (Operative Receiver Order, ¶ 3.j. at 10).

### THE DENTE/AEM PONZI SCHEME'S TRANSFERS TO MARY, HEATHER, AND SCHEIBAL DEVELOPMENT

23. Between December 22, 2017, and January 19, 2021, the Dente/AEM Ponzi Scheme made transfers to Mary (the "**Transfers to Mary**") in the total amount of $1,850,885.00 with individual transfers on or about the dates shown in the second column of the attached Exhibit 4—the *Schedule of Payments from the Dente/AEM Ponzi Scheme to Mary Scheibal*—in the amount on the corresponding line in the third column.

24. Between August 31, 2018, and March 26, 2021, the Dente/AEM Ponzi Scheme made transfers to Heather (the "**Transfers to Heather**") in the total amount of $662,195.00 with individual transfers on or about the dates shown in the second column of the attached Exhibit 5—the *Schedule of Payments from the Dente/AEM Ponzi Scheme to Heather Scheibal*—in the amount on the corresponding line in the third column.

25. Between February 22, 2018, and March 9, 2022, the Dente/AEM Ponzi Scheme made transfers to Scheibal Development (the "**Transfers to Scheibal Development**" and, together with the Transfers to Mary and the Transfers to Heather, the "**Transfers to the Scheibals**") in the total amount of $650,838.00 with individual transfers on or about the dates shown in the second column of the attached Exhibit 6—the *Schedule of Payments from the Dente/AEM Ponzi Scheme*

*to Scheibal Development*—in the amount on the corresponding line in the third column.

### THE STATE COURT COMPLAINT TO AVOID AND RECOVER THE DENTE/AEM PONZI SCHEME TRANSFERS

26. The Receiver filed his *Complaint to Avoid and to Recover Transferred Property or the Value of Transferred Property* against Scheibal Development, Mary, and Heather on August 15, 2024, thereby commencing Summit County Court of Common Pleas Case No. CV-2025-08-3519, *Mark E. Dottore, Receiver v. Scheibal Property Development, LLC, et al.* (the "**Scheibal State Court Case**"). A copy of the Receiver's complaint in the Scheibal State Court Case (without exhibits) is attached hereto as Exhibit 7.

27. Service was finally obtained on Scheibal Development, Mary, and Heather on November 27, 2024.

### THE BANKRUPTCY CASE

28. On December 20, 2024, the Debtors filed the Bankruptcy Case.

29. Edward A. Bailey is the Chapter 13 Trustee for the Bankruptcy Case.

30. On February 5, 2025, the Receiver filed his proof of claim in the amount of $3,163,918.00 (the "**Scheibals' Debt to the Receiver**") which amount is equal to the sum of the Transfers to the Defendants.

31. The deadline to file this complaint challenging the dischargeability of the Scheibals' Debt to the Receiver is April 7, 2025; therefore, this action is timely.

4934-9999-1322 v5

## COUNT I

### Avoidance of Fraudulent Transfers[5]; O.R.C. § 1336.07[6]

32. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

33. The Receiver is entitled to avoid each of the Transfers to the Scheibals pursuant to O.R.C. §§ 1336.04(A)(1) and 1336.07(A)(1).

## COUNT II

### Judgment for the Value of the Avoided Transfers; O.R.C. § 1336.08(B)(1)

34. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

35. Mary was the first transferee of each of the Transfers to Mary.

36. Heather was the first transferee of each of the Transfers to Heather.

37. Scheibal Development was the first transferee of each of the Transfers to Scheibal Development.

38. Each of the Transfers to Scheibal Development was made to or for the benefit of Mary.

39. Each of the Transfers to Scheibal Development was made to or for the benefit of Heather.

40. Each of the Transfers to Heather was made to or for the benefit of Mary.

---

[5] Unlike the typical avoidance of fraudulent transfer litigation in bankruptcy courts, this matter is about fraudulent transfers made to or for the benefit of the Debtors.

[6] As used in this complaint, "O.R.C." is the abbreviation for "Ohio Revised Code."

41. Each of the Transfers to Mary was made to or for the benefit of Heather.

42. Pursuant to O.R.C. § 1336.08(B)(1)(a), the Receiver is entitled to a judgment against Mary for the total value of the Transfers to the Scheibals.

43. Pursuant to O.R.C. § 1336.08(B)(1)(a), the Receiver is entitled to a judgment against Heather for the total value of the Transfers to the Scheibals.

44. Pursuant to O.R.C. § 1336.08(B)(1)(a), the Receiver is entitled to a judgment against Scheibal Development for the total value of the Transfers to Scheibal Development.

45. To the extent that any part of the Transfers to the Scheibals was transferred to any account that either Mary or Heather control or of which either Mary or Heather are the beneficiary, the Receiver is entitled to a judgment, pursuant to O.R.C. § 1336.08(b)(1)(B), against the owner, fiduciary agent, or beneficiary of that account for the return of the funds so transferred into the account.

## COUNT III
## Unjust Enrichment

46. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

47. The Defendants have received and been benefitted by $3,163,918.00 that they received from the Dente/AEM Ponzi Scheme.

48. Every payment received by the Defendants from the Dente/AEM Ponzi Scheme consisted of funds that were in the possession of the Dente/AEM Ponzi

- 14 -

Scheme solely because of the fraud perpetrated by Dente or other agents of the Dente/AEM Ponzi Scheme on other people; *i.e.*, the Dente/AEM Ponzi Scheme would have had no funds to transfer to the Defendants had the Dente/AEM Ponzi Scheme not been continuously defrauding others.

49. Mary, Heather, and Scheibal Development are the immediate transferees of moneys fraudulently obtained by the Dente/AEM Ponzi Scheme and were unjustly enriched by the amounts that they directly or indirectly received.

50. It would be inequitable to allow the Defendants to retain the benefits that they received from the Dente/AEM Ponzi Scheme.

## COUNT IV
## Constructive Trust

51. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

52. Mary, Heather, and Scheibal Development were the recipients of moneys wrongfully and fraudulently obtained by Dente and AEM Services from people who put money into the Dente/AEM Ponzi Scheme.

53. "A constructive trust is . . . an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud. See 53 OHIO JURISPRUDENCE 2D (1962) 578-579, Trusts, Section 88; V Scott, SCOTT ON TRUSTS (3 Ed. 1967) 3412, Section 462." *Ferguson v. Owens,* 9 Ohio St. 3d 223, 226 (1984).

54. The imposition of a constructive trust is authorized by O.R.C. §§ 1336.07(A)(3)(c) and 1336.10.

55. The imposition of a constructive trust on all funds transferred from the Dente/AEM Ponzi Scheme to Mary, to Heather, and to Scheibal Development and, therefore, on all funds traceable from the Dente/AEM Ponzi Scheme through any of them into any exempt accounts will not impact the distribution to any other creditors of the bankruptcy estate.

## COUNT V

### Exemption from the Discharge of a Debt for Money to the Extent Obtained by Actual Fraud; 11 U.S.C. § 523(a)(2)(A)

56. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

57. Section 523(a)(2) of the Bankruptcy Code provides, in pertinent part:

> A discharge under section 727 . . . or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . actual fraud[.]

11 U.S.C. § 523(a)(2)(A).

58. "Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed the fraud to obtain it." *Bartenwerfer v. Buckley*, 598 U.S. 69, 72, 143 S.Ct. 665, 670 (2023).

59. All the Transfers to the Scheibals were made with funds fraudulently obtained by the Dente/AEM Ponzi Scheme from others as part of the actual fraud of Mark Dente in his operation of the Dente/AEM Ponzi Scheme.

60. Put another way, none of the Transfers to the Scheibals would have been made but for Mark Dente's actual fraud in operating the Dente/AEM Ponzi Scheme.

61. The Receiver is entitled to a judgment exempting from discharge the entire amount of the Transfers to the Scheibals.

## COUNT VI
## Declaratory Judgment

62. The Receiver repeats and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

63. The original owner or creditor retains an equitable interest in fraudulently transferred funds.

64. The Receiver is entitled to a declaratory judgment that (a) neither Mary nor Heather nor Scheibal Development ever had an equitable interest in the Transfers to the Scheibals and (b) that the equitable interest in the Transfers to the Scheibals is not "property of the estate" as that terms is used in 11 U.S.C. § 541.

WHEREFORE, the Receiver prays that this Court enter judgment:

i. avoiding all the Transfers to the Scheibals pursuant to O.R.C. § 1336.07(A)(1);

ii. in favor of the Receiver and against Mary for the full amount of the Transfers to the Scheibals—that is, $3,163,918.00;

iii. in favor of the Receiver and against Heather for the full amount of the Transfers to the Scheibals—that is, $3,163,918.00;

iv. in favor of the Receiver and against Scheibal Development for the full amount of the Transfers to Scheibal Development—that is, $650,838.00;

4934-9999-1322 v5

    v.     in favor of the Receiver and against Mary in the amount by which Mary was unjustly enriched by receipt of transfers from the Dente/AEM Ponzi Scheme;

    vi.    in favor of the Receiver and against Heather in the amount by which Heather was unjustly enriched by receipt of transfers from the Dente/AEM Ponzi Scheme;

    vii.   in favor of the Receiver and against Scheibal Development in the amount by which Scheibal Development was unjustly enriched by receipt of transfers from the Dente/AEM Ponzi Scheme;

   viii.   ordering each Defendant to disgorge any unjust enrichment said Defendant received;

    ix.    the imposition of a constructive trust on all funds transferred from the Dente/AEM Ponzi Scheme to Mary, to Heather, and to Scheibal Development;

    x.     the imposition of a constructive trust on Debtors' property located at 2626 Sweet Clover Lane, Galena, Ohio 43021 to the extent it was improved or the mortgage paid down using funds received from the Dente/AEM Ponzi Scheme;

    xi.    exempting from discharge the entire amount of the debt due from Mary—that is, $3,163,918.00;

    xii.   exempting from discharge the entire amount of the debt due from Heather—that is, $3,163,918.00;

   xiii.   a declaratory judgment that neither Mary nor Heather nor Scheibal Development ever had an equitable interest in the Transfers to the Scheibals;

   xiv.   a declaratory judgment that the equitable interest in the Transfers to the Scheibals is not "property of the estate" as that terms is used in 11 U.S.C. § 541;

    xv.   for post-judgment interest as allowed by Ohio law;

   xvi.   for the costs of this adversary proceeding including the Receiver's reasonable attorneys' fees; and

   xvii.  for such other and further relief as the Court deems just and equitable.

4934-9999-1322 v5

| | |
|---|---|
| Dated: February 19, 2025 | Respectfully submitted,<br><br>*/s/ James W. Ehrman*<br>Mary K. Whitmer (0018213)<br>James W. Ehrman (0011006)<br>Scott R. Belhorn (0080094)<br>WHITMER & EHRMAN LLC<br>2344 Canal Road, Suite 401<br>Cleveland, OH 44113-2535<br>Telephone: (216) 771-5056<br>Email: mkw@weadvocate.net<br>        jwe@weadvocate.net<br>        srb@weadvocate.net<br><br>*Counsel for Mark E. Dottore, Receiver*<br><br>and<br><br>*/s/ Rachel L. Steinlage*<br>Rachel L. Steinlage (0079450)<br>MCCARTHY, LEBIT, CRYSTAL &<br>   LIFFMAN CO., LPA<br>1111 Superior Ave. East, Suite 2700<br>Cleveland, OH 44113<br>Telephone: (216) 696-1422<br>Email: rls@mccarthylebit.com<br><br>*Special Litigation Counsel for Mark E. Dottore, Receiver* |